**UNITED STATES of America, Plaintiff,**

**v.**

**Jamal Issa ALI, Defendant.**

**Cr. A. No. 89–00112–R/C–01.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

Feb. 6, 1991.

Ray Fitzgerald, Roanoke, Va., for U.S.

John C. Lowe, Charlottesville, Va., for defendant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

The matter presently before the Court is Jamal Issa Ali's motion for naturalization. All concerned parties have submitted legal memoranda on this matter, and it is, therefore, ripe for resolution. Before turning to the body of this Memorandum Opinion, however, the Court will make a few comments that will be later expanded.

This Memorandum Opinion brings to a close a case that has proved very distressful to this Court. The Court has been troubled by the Immigration and Naturalization Service's (hereinafter "INS's") participation in the present case, but more importantly, the result that is mandated by the relevant federal statutes on Jamal Issa Ali's motion for naturalization gives this Court considerable pause. As the following pages will reveal more fully, the Court

believes that Jamal Issa Ali's motion for naturalization must be denied, but in denying that motion, the Court realizes that it may play a part in forcing this young man to return to an inhospitable part of the world that will undoubtedly have a tremendous impact upon his future well-being and security.

■ At the time that this matter is before the Court, judicial notice must be taken of the martial conditions that now exist in the Middle East.[1] Although the Court must apply the laws of this country as they are written, the Court knows that its decision on this matter may be a step towards Jamal Issa Ali's ultimate forced relocation to the Middle East, and at minimum, this is an unsettling prospect. Nevertheless, the decision on whether Jamal Issa Ali must be deported or whether he can remain in this country is not before this Court. The United States Congress has stated that this crucial decision belongs to the INS and that this Court is not authorized to intervene at this stage in the process.[2] Accordingly, the Court trusts that the INS will consider the current state of affairs in the Middle East along with all other relevant factors and will resolve Jamal Issa Ali's case in the manner that it believes most appropriate under the circumstances, but as indicated, this is all that the Court can do.

### Factual Background

Jamal Issa Ali was born in Jerusalem on December 25, 1963. After completing high school, he moved to the United States to join other members of his immediate family, and he has remained in this country for the better part of a decade. Despite the length of his stay in this country, Jamal Issa Ali has not, however, become a naturalized citizen. He has formally applied for naturalization, but the record in this case indicates that his citizenship remains in the Kingdom of Jordan, and presumably, if not in this country, Jamal Issa Ali would reside in Jordan.

On December 12, 1989, Jamal Issa Ali and his brother, Nidal Issa Ali, both pled guilty to conspiring to purchase an unregistered machine gun, from which the identifying serial number had been removed, and a silencer for the machine gun. Thereafter, the INS lodged a detainer against Jamal Issa Ali for possible deportation proceedings. Pursuant to the relevant federal statutes, the INS apparently believes that the offense to which Jamal Issa Ali has pled guilty in this Court provides a sufficient basis for his deportation. *See* 8 U.S.C. § 1251(a)(14) (1990). After the filing of the deportation detainer, counsel for Jamal Issa Ali filed a motion with the Court asking that a judicial recommendation against deportation be issued at the date of sentencing or within the ensuing thirty days. *See* 8 U.S.C. § 1251(b) (1970). Additionally, counsel for Jamal Issa Ali also filed the instant motion with the Court asking that his client be naturalized immediately.

On September 24, 1990, Jamal Issa Ali was sentenced to serve a term of imprisonment for 18 months and to serve a term of supervised release, following his incarceration, for 24 months. Since the naturalization and judicial-recommendation-against-deportation motions were still pending at that time, the Court ordered the United States Marshal to retain custody of Jamal Issa Ali and to house him in the Western District of Virginia until all pending matters in his case had been resolved. The Court also set a briefing schedule on both motions pending in the case.

On October 23, 1990, this Court issued an Order and Memorandum Opinion denying Jamal Issa Ali's motion for a judicial recommendation against deportation. The Court held that, based upon relevant federal statutes and case law, it did not have the

---

1. For future reference, the United States, along with other nations, is in conflict with the country of Iraq at the writing of this Memorandum Opinion.

2. Of course, deportation decisions made by the INS are subject to judicial review either through

habeas corpus actions or actions pursuant to the Administrative Procedures Act. *See In re Petition of Terzich*, 256 F.2d 197, 200 (3rd Cir.), *cert. denied*, 358 U.S. 843, 79 S.Ct. 66, 3 L.Ed.2d 77 (1958). The present case is, however, far from that point.

authority to issue a judicial recommendation against deportation in Jamal Issa Ali's particular case. Alternatively, the Court held that, even if it did have such authority, the issuance of a judicial recommendation against deportation would still not be an appropriate measure since the present case did not involve the exceptional circumstances that are typically required before courts will employ this drastic and uncommon relief.

Having resolved the judicial-recommendation-against-deportation question, the Court next turned its attention to Jamal Issa Ali's motion for naturalization. On November 15, 1990, counsel for Jamal Issa Ali filed with the Court his legal memorandum in support of the motion for naturalization. The INS did not, however, respond with its required pleading until January 14, 1991, approximately six weeks after the prescribed deadline. Thereafter, counsel for Jamal Issa Ali submitted his legal memorandum in reply on January 18, 1991, and this matter then became ripe for resolution.

In his legal memoranda in support of the motion, counsel for Jamal Issa Ali argues that this Court should naturalize his client because his client's conviction on the firearms-conspiracy charge does not, pursuant to the relevant federal statutes and regulations, render his client unfit for citizenship. He further argues that the Immigration and Nationality Act, see 8 U.S.C. §§ 1101–1503 (1970), does not require administrative remedies to be exhausted prior to this Court's considering and granting his client's motion for naturalization. Counsel for Jamal Issa Ali concludes by arguing that there are no compelling reasons for not naturalizing his client and that there are many compelling reasons for doing so.

In its pleading filed in response to the motion, the INS argues that Jamal Issa Ali's conviction in this Court on the firearms-conspiracy charge does, indeed, disqualify him from obtaining citizenship. More importantly, the INS maintains that, within the Immigration and Nationality Act, see 8 U.S.C. § 1429 (1970), there is a "priority provision" that requires any court in which a naturalization petition has been filed to deny the petition if concurrent deportation proceedings are pending. Since the deportation process has commenced in Jamal Issa Ali's case, the INS, therefore, asserts that this Court should deny his motion for naturalization.

*Legal Analysis*

■■■ Pursuant to the Immigration and Nationality Act, see 8 U.S.C. §§ 1101–1503 (1970), courts given naturalization jurisdiction[3] play the pre-eminent role in the naturalization process. *See* 3A Am.Jur.2d *Aliens and Citizens* § 1641 (1986). While the INS plays a critical role in processing applications, conducting investigations and examinations of applicants, and making recommendations regarding particular applicants, the court with jurisdiction over the applicant in question bears the responsibility for the ultimate decision on whether to grant or deny that applicant's petition for naturalization. *See id.* The INS has no authority either to grant or deny a petition for naturalization, and moreover, it cannot deny any applicant the right to apply for naturalization to any court that is authorized to exercise naturalization jurisdiction. *See id.* Regardless of the INS's position on a given application, that applicant in most instances has the right to submit his case to the appropriate court and, after the necessary proceedings, obtain a ruling on his eligibility for citizenship. *See id.*

■■■ In the typical case, however, courts do not become involved in the naturalization process until the very end. Usually, the courts' involvement does not occur until the culmination of the naturalization process when a final hearing before the court on a given application results in an order either granting or denying citizenship to the naturalization petitioner. *See id.* at § 1641. While the INS has a great deal of influence as to the nature of the final hearing, it is important to remember that the petitioner normally has an absolute right to have his petition submitted to and ruled on

---

**3.** This court is clearly one of the courts given naturalization jurisdiction by the Immigration and Nationality Act. *See* 8 U.S.C. §§ 1101(a)(24), 1409(a) (1970).

by a court with naturalization jurisdiction. *See id.* There is, nonetheless, one major exception to this general rule.

Section 1429 of title 8 of the United States Code provides, in pertinent part, that:

[N]o person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter or any other [a]ct[,] and *no petition for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a deportation proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other [a]ct[.]*

8 U.S.C. § 1429 (1970) (emphasis added).[4] This provision announces the general rule (1) that no person may be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the Immigration and Nationality Act and, most relevant to the present analysis, (2) that no petition for naturalization can be finally heard by a court with naturalization jurisdiction if there is pending against the petitioner a deportation proceeding pursuant to a warrant of arrest issued under the Immigration and Nationality Act. *See 3A Am. Jur.2d Aliens and Citizens* at § 1595. This provision creates a flat prohibition from further action and divests from a court, falling within its purview, the naturalization jurisdiction that could otherwise be exercised. *See In re Petition of Terzich,* 256 F.2d 197 (3rd Cir.), *cert. denied,* 358 U.S. 843, 79 S.Ct. 66, 3 L.Ed.2d 77 (1958); *Application of Martini,* 184 F.Supp. 395, 399 (S.D.N.Y.1960) ("[T]he mere pendency of a deportation proceeding or a final finding of deportability pursuant to a warrant of arrest prevent[s] naturali-

zation from occurring before the final disposition of such deportation proceedings."); *In re Petition of Horvath,* 166 F.Supp. 938 (N.D.W.Va.1958); *cf. In re Verbich,* 1 F.2d 589 (D.Colo.1924).[5] Furthermore, an order to "show cause" issued in a deportation proceeding, for purposes of this provision, is regarded as a "warrant of arrest." *See* 8 C.F.R. § 318.1 (1990); *see also Shomberg v. United States,* 348 U.S. 540, 75 S.Ct. 509, 99 L.Ed. 624 (1955); *In re Muniz,* 151 F.Supp. 173 (W.D.Pa.1956); 3A Am.Jur.2d *Aliens and Citizens* at § 1595.

The rationale for this provision is twofold. To begin with, United States citizenship is regarded as a high honor and something that is not to be bestowed on the unfit. *See Costello v. United States,* 365 U.S. 265, 269, 81 S.Ct. 534, 536, 5 L.Ed.2d 551 (1961) ("American citizenship is a precious right[.]"); *In re Petition for Naturalization of Quintana,* 203 F.Supp. 376, 378 (S.D.Fla.1962) ("Naturalization is a matter of grace, not right.... Once the conditions are so prescribed, the courts are without authority to modify or change them."); *see also United States v. Vujnovic,* 12 F.Supp. 208 (W.D.N.Y.1935). Secondly and more importantly, "the legislative purpose in enacting [this provision] was to prevent a race between an alien and the immigration authorities to be naturalized before deportation proceedings could be completed [—] [the provision] ... gives priority to deportation proceedings over naturalization proceedings." *Martini,* 184 F.Supp. at 399; *see Shomberg,* 348 U.S. at 541–44, 75 S.Ct. at 510. As stated by the Third Circuit Court of Appeals in its *Terzich* opinion:

[This provision] was 'designed to prevent a race between deportation proceedings and naturalization proceedings.... When, as here, a final finding of deportability is outstanding against a petitioner,

---

**4.** The term "naturalization court" is a defined term within the Immigration and Nationality Act. *See* 8 U.S.C. §§ 1101(a)(24), 1421(a) (1970). Pursuant to sections 1101(a)(24) and 1421(a) of the Act, this Court falls within the definition of a "naturalization court."

**5.** The Court realizes that many of the cited cases and quoted passages in this Memorandum Opin-

ion deal with statutory provisions that pre-date the present section 1429 of title 8 of the United States Code. However, the cited cases and quoted passages deal with predecessors of the present section 1429 that are substantially similar, and their logic and reasoning continue to have vitality where the present section 1429 is concerned.

the statute provides that he may not be naturalized. We find in this limitation no suggestion that jurisdiction to review the deportation proceeding thereby devolves upon the naturalization court. Rather, the provision compels the conclusion that Congress intended to separate deportation and naturalization proceedings. Once a naturalization court determines that a final finding of deportability is outstanding, it is required to deny the petition. Thereafter the petitioner may seek judicial review of the deportation order by habeas corpus or under the Administrative Procedures Act. The mere fact that there might be some delay involved in finally determining the naturalization proceeding when and if the order of deportation is expunged does not compel a contrary result.... It may be noted that in oral argument, petitioner suggested that the order in question is not a "final finding of deportability" under [the provision]. This position is premised on the assumption that [the provision] speaks of judicial finality, rather than administrative finality. But assuming arguendo its correctness, [the provision] compels the determination that a naturalization court has no jurisdiction over the deportation proceeding which, if not finally determined, would necessarily be pending. [The provision] clearly states that 'no petition for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a deportation proceeding.'

256 F.2d at 200 (citations omitted).

In the present case, a "show-cause" order was issued against Jamal Issa Ali on October 14, 1990 and was served on him on October 24, 1990. Additionally, the record in this case reflects that, on numerous occasions, the pending deportation proceedings against Jamal Issa Ali have been brought to the attention of this Court by both counsel for the United States and counsel for Jamal Issa Ali. Accordingly, based upon the plain language of section 1429 of title 8 of the United States Code, the Court has no option but to deny Jamal Issa Ali's motion for naturalization. As indicated above, the Court has no jurisdiction to naturalize Jamal Issa Ali since deportation proceedings are pending against him, and this recognition largely puts an end to the present analysis. Before concluding, however, the Court will expand on two points outlined briefly in the preface to this Memorandum Opinion.

First, this Court notes the difficulty that has been encountered in the present case in securing the INS's participation in responding to Jamal Issa Ali's motion for naturalization. Acknowledging the pressures that most federal agencies face, the Court, nevertheless, believes that the INS's delay in responding to the motion has unnecessarily impeded the orderly resolution of this matter by the Court.[6] Suffice it to say, the INS is regarded by this Court as having both great expertise and great responsibility in the areas of naturalization and deportation. Such expertise, as broad and excellent as it is, is of lesser value to the Court in resolving issues like these presently before the Court when it is not tendered in a timely fashion.

Second, the Court is of the opinion that the current situation in the Middle East should be carefully considered by the INS when it makes its final decision regarding the possible deportation of Jamal Issa Ali. Even though he has been convicted of a serious offense, the forcible return of Jamal Issa Ali to an area of the world deeply embroiled in conflict is a troubling prospect. The Court has previously observed that the INS, bestowed by Congress with great responsibility in matters dealing with naturalization and deportation, has gained strong expertise in these areas; the full measure of that expertise should be applied in Jamal Issa Ali's case so that all relevant

---

**6.** Nothing in this Court's Memorandum Opinion should be taken as a criticism of the United States Attorney's office. As always, the United States Attorney's office has performed in this case with the highest degree of professionalism and courtesy, and if the Court had not received the assistance of Assistant United States Attorney Ray B. Fitzgerald in convincing the INS to participate in this case, the Court might not have received all the relevant information that it needed to rule on Jamal Issa Ali's motion for naturalization.

factors will be considered and properly weighed in making a decision regarding his possible deportation.[7]

### Conclusion

For the above-stated reasons, Jamal Issa Ali's motion for naturalization must be denied.

An appropriate Order shall this day issue.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this day

### ADJUDGED AND ORDERED

as follows:

1. Jamal Issa Ali's motion for naturalization shall be, and it hereby is, denied.

2. This Court hereby directs the United States Marshal to transfer custody of Jamal Issa Ali to the Bureau of Prisons for transportation to the correctional institution to which he has been assigned.

3. Paragraph six of this Court's October 22 Order, retaining personal jurisdiction over Jamal Issa Ali pending a final decision on his motion for naturalization, shall be, and it hereby is, vacated.

4. Counsel for the plaintiff is hereby directed to provide the relevant parties in the Immigration and Naturalization Service with copies of this Order and the accompanying Memorandum Opinion.

The Clerk of the Court is hereby directed to send a certified copy of this Order and the accompanying Memorandum Opinion to all counsel of record and to United States Marshal Wayne Beaman.

---

[7.] This is not to say that the Court believes that the current state of affairs in the Middle East should be dispositive on Jamal Issa Ali's possible deportation. The Court simply would suggest that the current state of affairs in the Middle East appears to be a major factor that the INS should consider in determining whether to deport Jamal Issa Ali.