Nery S. TELLEZ, aka Nery S. Mendoza–Camas, Plaintiff,

v.

U.S. IMMIGRATION AND NATURALIZATION SERVICE and Thomas J. Schiltgen, as District Director, Los Angeles District, U.S. Immigration & Naturalization Service, Defendants.

No. CV 99–9462 DT (AIJx).

United States District Court, C.D. California.

Feb. 14, 2000.

Nery S. Tellez, aka Nery S. Mendoza–Camas, Suanne I. Honey, Attorney at Law, Orange, CA, for plaintiff.

U.S. Immigration and Naturalization Service and Thomas J. Schiltgen, as District Director, Los Angles District, U.S. Immigration & Naturalization Service,

Leon W. Weidman, AUSA, Shirley Wang Hoo, AUSA, United States Attorney's Office, Los Angeles, CA, for defendants.

## ORDER **GRANTING** DEFENDANTS U.S. IMMIGRATION AND NATURALIZATION SERVICE AND THOMAS J. SCHILTGEN'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

TEVRIZIAN, District Judge.

## I. *Background*

### A. Factual Summary

This action is brought by Plaintiff Nery S. Tellez aka Nery S. Mendoza–Camas ("Plaintiff") against Defendants United States Immigration & Naturalization Service and Thomas J. Schiltgen, as District Director, Los Angeles District, U.S. Immigration & Naturalization Service (collectively, "Defendants") seeking (1) de novo judicial review by this Court of Defendants' denial of Plaintiff's application for naturalization, (2) a de novo hearing on Plaintiff's naturalization application, (3) an order of this Court naturalizing Plaintiff, or alternatively, (4) an order of this Court requiring Defendants to naturalize Plaintiff.

The following facts are alleged in the Complaint:

Plaintiff is statutorily eligible for naturalization as an United States citizen. (Complaint, ¶ 6.) She has maintained lawful permanent resident status since being awarded such status on June 19, 1985. (*Id.*)

In March of 1996, Plaintiff filed an N–400 application for naturalization with the INS at the Western Service Center in Laguna Niguel, California. (*Id.* at ¶ 7.) In a decision dated March 23, 1999, the INS denied her naturalization application based upon a finding that Plaintiff lacked good moral character during the statutory period. (*Id.* at ¶ 8.)

Plaintiff has exhausted all forms of administrative remedies available to her before filing the present complaint. (*Id.* at ¶ 9.) On or about April 1, 1999, Plaintiff submitted a request on Form N–336 and paid the fee of $110.00 for a hearing on the denial of her naturalization application. (*Id.* at ¶ 10.) The stated basis for the request was that the INS erred in finding that Plaintiff lacked good moral character because the alleged visa fraud committed by Plaintiff occurred well outside the statutory 5–year period. (*Id.*)

Before the INS scheduled Plaintiff for a hearing on the decision, it issued a Notice to Appear dated April 23, 1999, against Plaintiff. (*Id.* at ¶ 11.) The INS alleged that Plaintiff was deportable in that at the time of entry or adjustment of status she was within one or more classes of aliens inadmissible by the law existing at such time. (*Id.*) Specifically, the INS alleged that Plaintiff committed visa fraud at the time of her admission into the United States as a permanent resident in 1985, more than 14 years ago. (*Id.*) on June 14, 1999, Plaintiff filed a motion with the Immigration Court to terminate her removal proceedings to allow her to complete her application for naturalization. (*Id.* at ¶ 12.) The Court denied the motion on August 4, 1999. (*Id.*)

On August 7, 1999, Plaintiff made a written request to the Department of Justice requesting the INS to schedule her for an immediate hearing on the denial of her naturalization application. (*Id.* at ¶ 13.) Plaintiff also informed the Department of Justice and the INS that she intended to seek judicial review in federal district court should they fail to schedule her for an immediate hearing. (*Id.*) Neither the Department of Justice nor the INS has responded to Plaintiff's request for an immediate hearing. (*Id.*)

Plaintiff is and was a person of good moral character during the statutory 5–year period. (*Id.* at ¶ 14.) She has a college degree and California teaching credentials, which she uses to teach at Nueva Vista Elementary School in Bell, California. (*Id.*) She also volunteers to teach preschool through the second grade at her church. (*Id.*) Plaintiff and her husband have two American-born children together. (*Id.*) Without her assistance, Plaintiff's husband would not be able to raise their two children alone or provide for all of the family's financial needs. (*Id.*)

### B. Procedural Summary

On September 17, 1999, Plaintiff filed the Complaint for Declaratory Relief.

On January 3, 2000, Defendants filed a Motion to Dismiss, which was originally set for hearing on January 31, 2000. However, on this same date, Plaintiff filed a Substitution of Attorney, substituting an attorney in place of Plaintiff in Pro Per. As such, the Motion to Dismiss was continued to this date to allow Plaintiff to file an Opposition, which she subsequently did.

## II. *Discussion*

### A. *Standard*

#### 1. Motion to dismiss for lack of subject matter jurisdiction

■ Federal courts are courts of limited jurisdiction. Federal courts are "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221, 1225 (9th Cir.1989). Thus, when a defendant brings a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), the plaintiff bears the burden of establishing jurisdiction. *See Kokkonen v. Guardian Life Ins.,* 511 U.S. 375, 378, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994).

### B. *Factual Basis for this Motion*

In support of this motion, Defendants set forth the following additional facts:

Plaintiff is a native and citizen of Nicaragua. In February of 1984, Plaintiff's mother filed a petition for an alien relative immigrant visa on behalf of Plaintiff as an

"unmarried daughter" of a lawful permanent resident. *See* Motion, Exh. 1. On March 1, 1984, the INS approved the petition.

On or about June 19, 1985, at the American Embassy in Tijuana, Mexico, Plaintiff submitted an application for an immigrant visa as an "unmarried daughter" of a lawful permanent resident. *See id.* at Exh. 2. Question 9 on the visa application asked Plaintiff to indicate her marital status. Under penalty of perjury, Plaintiff claimed that her marital status was single. During her immigrant visa interview at the American Embassy on June 19, 1985, Plaintiff continued to maintain that she was single and that she had never married. *See id.* On June 19, 1985, Plaintiff was admitted into the United States as a lawful permanent resident. Plaintiff's immigrant classification at the time of her admission was as an "unmarried daughter" of a lawful permanent resident. *See id.* at Exh. 3.

On June 7, 1984, Plaintiff and Ariel Roberto Tellez, a Mexican native, applied for a marriage license. On June 9, 1984, the couple were married in Hawthorne, California. The certificate of their marriage was registered with the County of Los Angeles on June 29, 1984. *See id.* at Exh. 4. Thus, Defendants allege that at the time Plaintiff submitted her application for an immigrant visa on or about June 19, 1985, she was married and that during her consular interview on June 19, 1985, she was married. Defendants argue that had Plaintiff disclosed her true marital status on her application for an immigrant visa or during her consular interview for her visa application, she would not have been eligible for an immigrant visa as an "unmarried daughter" of a lawful permanent resident.

On March 6, 1996, Plaintiff filed an application for naturalization. *See id.* at Exh. 5(a). Part 5 of this application pertained to questions regarding Plaintiff's marital history. In response to the questions, Plaintiff indicated that she was married and that her husband's name was Ariel Roberto Tellez. A preliminary examination on the application for naturalization was held before a naturalization examiner on July 23, 1996. During her preliminary naturalization interview, Plaintiff testified that she had been married to Mr. Tellez since June 9, 1984. Based on the information she provided in her application and the testimony she gave to the INS examiner, Plaintiff's case was continued for further investigation. *See id.* at Exh. 5(b).

On October 1, 1996, Plaintiff was re-examined on her application for naturalization by INS Officer Lee Colitre. *See id.* at Exh. 5(c). During this second interview, Plaintiff submitted a certified copy of her marriage certificate. The marriage certificate confirmed Plaintiff's testimony that she was married on June 9, 1984 to Mr. Tellez. The certificate also confirmed that Plaintiff was ineligible for the immigrant visa she obtained in 1985 as an "unmarried daughter" of a lawful permanent resident. Officer Colitre thus did not approve Plaintiff's application. Instead, he provided Plaintiff with a letter indicating that she would be notified of further action on her case. *See id.* at Exh. 5(d). Officer Colitre subsequently forwarded Plaintiff's administrative file to the naturalization continued unit and requested an investigation for possible visa fraud. *See id.* at Exh. 5(e).

On September 23, 1997, Plaintiff was again interviewed on her eligibility for naturalization. During the interview, Plaintiff once again submitted a copy of her marriage certificate that showed she was married on June 9, 1984. Plaintiff was further questioned by INS Officer Marino as to why she failed to disclose to the American consulate her marital status at the time of her visa interview. Her response is documented in a Memo to File dated September 23, 1997, which shows that Plaintiff admitted to the INS officer that her attorney had advised her not to disclose the fact that she was married, because if she were to be petitioned by her husband instead, it

would take "a real long time." *See id.* at Exh. 5(f).

On March 23, 1999, the INS denied Plaintiff's application for naturalization. *See id.* at Exh. 5(g). On April 19, 1999, Plaintiff filed a Request for a Hearing on a Decision in Naturalization Proceedings in accordance with section 336(a) of the Immigration and Nationality Act ("INA"). *See id.* at Exh. 5(h), while Plaintiff's request for a review hearing was being processed, the INS instituted removal proceedings by serving Plaintiff with a Notice to Appear ("NTA"), charging her with being removable from the United States on three separate grounds.[1] *See id.* at Exh. 6.

The most serious of the allegations in the NTA is the charge that Plaintiff, at the time of entry or adjustment of status, was inadmissible because she sought to procure, or procured a visa or entry into the United States by fraud or by willfully misrepresenting a material fact, pursuant to INA section 212(a)(6)(C)(i). On June 2, 1999, Plaintiff appeared for her initial removal hearing before the Immigration Court. Her case was continued to August 4, 1999, so that Plaintiff's attorney could submit a motion to terminate removal proceedings. On June 19, 1999, Plaintiff's attorney filed a motion to terminate removal proceedings with the Immigration Court. *See id.* at Exh. 7. On August 4, 1999, the Immigration Judge denied Plaintiff's motion to terminate removal proceedings. The case was continued to February 7, 2000, to permit Plaintiff to pursue her naturalization appeal and to give the INS an opportunity to submit evidence to support the allegations of removability. *See id.* at Exh. 8.

On November 9, 1999, a review hearing was conducted pursuant to section 336(a) of the INA to allow Plaintiff the opportunity to overcome the basis of the INS' deni-

al. *See id.* On or about November 18, 1999, the INS sustained the denial of Plaintiff's application for naturalization.

With respect to Plaintiff's appearance before an Immigration Judge on February 7, 2000 to answer to the charges of removability, INS District Counsel informed the U.S. Attorney's Office that Plaintiff failed to appear on February 7, 2000 (even though Plaintiff's attorney was present). The matter has been continued to February 9, 2000 for Plaintiff to demonstrate good cause for failing to appear.

### B. *Analysis*

#### 1. This Court lacks subject matter jurisdiction

█ Prior to 1990, the United States district courts were vested with exclusive jurisdiction to naturalize aliens as citizens of the United States. However, a district court was prohibited from naturalizing an alien against whom there was pending a deportation proceeding pursuant to a warrant of arrest. This preclusion was intended to prevent a race between the alien to gain citizenship and the Attorney General to deport him. *See Shomberg v. United States,* 348 U.S. 540, 544, 75 S.Ct. 509, 99 L.Ed. 624 (1955); *see also Duenas v. United States,* 330 F.2d 726 (9th Cir.1964).

In 1990, Congress passed the Immigration Act of 1990 ("1990 Act"), Pub.L. No. 101–649, § 401, 104 Stat. 4978. The 1990 Act removed naturalization from the courts and vested the Attorney General with "sole authority to naturalize persons as citizens of the United States." 8 U.S.C. § 1421(a). Under the 1990 Act, the district courts have no authority either to grant or deny applications for naturalization. Rather, Section 310(c) of the INA created a process for district court judicial review of denied applications for naturalization:

> In any event, the INS may initiate removal proceedings at any time with the filing of the charging document stating the grounds of removal. *See* 8 C.F.R. §§ 3.14; 239.1.

---

**1.** Plaintiff claims that the administrative remedies were not exhausted prior to the institution of removal proceedings. However, Plaintiff provides no support for this claim.

A person whose application for naturalization ... is denied, after a hearing before an immigration officer ..., may seek review of such denial before the United States District Court for the district in which such person resides.... Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c). Thus, district courts are precluded from exercising jurisdiction until the INS has acted on the application or until 120 days after the naturalization interview. *See* 8 U.S.C. §§ 1421(c), 1447(b).

Section 318 of the INA also was amended to reflect the shift from judicial to administrative naturalization proceedings. *See* 8 U.S.C. § 1429. It contains the same proscription against reviewing a naturalization request by an alien in removal proceedings. However, the proscription is directed not at the district courts but at the Attorney General. It provides in pertinent part:

... no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest ...; and no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act....

8 U.S.C. § 1429.

As a result of the above, the issue becomes the interplay between Sections 310 and 318 of the INA. More specifically, the issue is whether Section 318 limits district court jurisdiction when an applicant for naturalization is also in removal proceedings or whether Section 318 only limits the Attorney General. Defendants argue that the history of Section 318 shows that Congress intended to limit district court jurisdiction. Plaintiff, on the other hand, argues that Congress did not intend to limit the district courts.

This Court agrees with Defendants that Congress intended to limit district court jurisdiction. This Court acknowledges that some district courts have interpreted Section 318 as limiting the jurisdiction of the Attorney General only and not that of the district courts when removal proceedings are pending against a naturalization applicant. *See, e.g., Gatcliffe v. Reno,* 23 F.Supp.2d 581 (D.Vi.1998), *Ngwana v. Attorney General of the United States,* 40 F.Supp.2d 319 (D.Md.1999). Indeed, Plaintiff relies almost exclusively on the decision and reasoning in *Ngwana.* However, other district courts have interpreted Section 318 as divesting the district court of jurisdiction when removal proceedings are pending against a naturalization applicant. This Court agrees with the latter opinions of the district court and finds their reasoning to be more persuasive.

In *Mosleh v. Strapp,* 992 F.Supp. 874 (N.D.Tex.1998), the court dismissed the plaintiff's complaint seeking naturalization. The court reasoned that section 318 divests the court of jurisdiction that could otherwise be exercised. *Id.* at 876. The court's decision was based on the amendment in the 1990 Act. However, the court relied on cases which were decided under the pre–1990 version of Section 318. In those cases, the court held that it lacked jurisdiction to review the petitioner's complaint, reasoning that the legislative purpose of preventing a race between the alien and the immigration authorities gives priority to the deportation proceedings over the naturalization proceedings. *See United States v. Ali,* 757 F.Supp. 710, 713 (W.D.Va.1991); *In re Petition of Terzich,* 256 F.2d 197, 200 (3d Cir.1958). These courts further reasoned that Section 318 compels the conclusion that Congress intended to separate deportation and naturalization proceedings. *See Ali,* 757 F.Supp. at 714. Thus, once a naturalization court determines that a final finding

of deportability is outstanding, it is required to deny the petition. *See id.*[2]

This Court finds that Section 318 limits this Court's jurisdiction when a naturalization applicant is subject to removal proceedings. This interpretation is supported by the history of Section 318, which shows that the provision was designed to give priority to deportation/removal proceedings over naturalization proceedings. Congress enacted the pre–1990 version of Section 318 to prevent a race between an alien, seeking to be naturalized, and immigration authorities who needed to complete removal proceedings. *Application of Martini,* 184 F.Supp. 395, 399 (S.D.N.Y.1960). Thus, while few courts have found otherwise, this Court finds that the legislative purpose behind Section 318 weighs against district court jurisdiction over naturalization when removal proceedings are pending. If it were otherwise, applicants for naturalization can frustrate their removal proceedings by filing a petition for review of their naturalization decision.[3]

In this case, Plaintiff is currently the subject of removal proceedings. Plaintiff was issued a Notice to Appear, dated April 23, 1999, charging her with being removable from the United States on three separate grounds.[4] On June 2, 1999, Plaintiff appeared for her initial removal hearing before the Immigration Court. Her case was continued to August 4, 1999, so that Plaintiff's attorney could submit a motion to terminate removal proceedings. On June 19, 1999, Plaintiff's attorney filed a motion to terminate removal proceedings with the Immigration Court. On August 4, 1999, the Immigration Judge denied Plaintiff's motion to terminate removal proceedings. The case was continued to February 7, 2000, to permit Plaintiff to pursue her naturalization appeal and to give the INS an opportunity to submit evidence to support the allegations of removability. Apparently, Plaintiff failed to appear on February 7, 2000 (even though Plaintiff's attorney was present), and the matter has been continued to February 9, 2000 for Plaintiff to demonstrate good cause for failing to appear. In light of the foregoing, this Court is without jurisdiction to currently consider Plaintiff's request for review of her naturalization application. Accordingly, this Court **grants** Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction **without prejudice.**[5]

In light of the foregoing, this Court does not need to address Defendants' alternative motion to dismiss for failure to state a claim upon which relief can be granted.

### 2. Plaintiff's request to amend the Complaint is denied

In her opposition, Plaintiff makes a request to amend the Complaint to include as a defendant the Attorney General and to add a count for a request for the district court to issue an injunction against both the INS as well as the Attorney General from proceeding any further with the re-

---

**2.** Another district court also has interpreted the post–1990 version of Section 318 as limiting its jurisdiction over naturalization when an alien was subject to a final deportation order. *See Mendonca v. INS,* 52 F.Supp.2d 155.

**3.** Of course, Plaintiff argues that divesting the court of jurisdiction would allow the INS to circumvent judicial review of naturalization by instituting removal proceedings. However, this Court finds it more persuasive that aliens should not be allowed to circumvent their removal proceedings by filing a petition for review of their naturalization proceeding in light of Congress' intent to give priority to removal/deportation proceedings.

**4.** According to Defendants, the most serious of the allegations in the Notice to Appear is the charge that Plaintiff, at the time of entry or adjustment of status, was inadmissible because she sought to procure, or procured a visa or entry into the United States by fraud or by willfully misrepresenting a material fact.

**5.** Depending upon the outcome of Plaintiff's removal proceedings, Plaintiff can and should refile this action.

moval proceedings and to dismiss the removal proceedings.

■ Defendants oppose the amendment claiming that the amendment would be futile. This Court agrees. Reasons which may justify denial of an amendment include undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendments, prejudice to the opposing party, and futility of the amendment. *See Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987). In this case, as explained below, because this Court lacks jurisdiction over the commencement of removal proceedings, the amendment would be futile.

Prior to 1996, Section 106(a)(10) of the INA, 8 U.S.C. § 1105a(a)(10), which sets forth the provisions for judicial review of immigration matters, permitted any alien held in custody pursuant to a final order of deportation to obtain judicial review thereof by means of habeus corpus proceedings. However, in September 1996, Congress enacted the Immigration Reform and Immigrant Responsibility Act of 1996, which repealed all of the judicial review provisions in 8 U.S.C. § 1105a, and replaced them with revised review provisions in new Section 242 of the Act, 8 U.S.C. § 1252. Under the new Section 242, the only form of judicial review available for orders of removal based on a finding of deportability is by means of a petition for review initiated in a court of appeals. *See* 8 U.S.C. § 1252(b)(2).

In addition, Congress added a new "exclusive jurisdiction" provision:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under [the INA].

8 U.S.C. § 1252(g). Under Section 306(c)(1), this provision was given retroactive effect, to be applied "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings."

Plaintiff requests leave to amend the Complaint to seek an order enjoining the Attorney General from proceeding with the removal proceedings. However, as set forth above, this Court unfortunately does not have jurisdiction over such a claim. As such, the amendment sought by Plaintiff would be futile.

As Defendants note, Plaintiff cites Section 242(f) of the INA, 8 U.S.C. § 1252(f), as the basis for the injunction. Section 242(g) provides:

> Limit on Injunctive Relief
>
> (1) Regardless of the nature of the action or claim or the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of chapter 4 of title II, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such chapter have been initiated.
>
> (2) Notwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law.

Defendants argue that the Supreme Court has stated that this section is not affirmative grant of jurisdiction but is "nothing more or less than a limit on injunctive relief." *Reno v. American–Arab Committee*, 525 U.S. 471, 119 S.Ct. 936, 942, 142 L.Ed.2d 940 (1999). Even assuming this Court had jurisdiction to enjoin the remov-

al of Plaintiff pursuant to a final order, in this case, there is no final order of removal with respect to Plaintiff. As such, the amendment would be futile at this time.

Accordingly, in light of the above, this Court **denies** Plaintiff's request to amend the Complaint.[6] As such, Plaintiff's argu-

ments that she is not subject to removal as a matter of law are moot at this time.

**IT IS SO ORDERED.**

---

6. Again, while amendment of the current complaint is futile at this time, depending upon the outcome of the removal proceed-

ings, Plaintiff can and should refile this action consistent with the principles discussed herein.