For the foregoing reasons, Counts V, IX, and X will be dismissed.

**Albert Agha NGWANA, Petitioner,**

v.

**The ATTORNEY GENERAL OF THE UNITED STATES, et al., Respondents.**

**No. Civ.A. DKC–98–3479.**

United States District Court, D. Maryland.

March 3, 1999.

Albert Agha Ngwana, Silver Springs, MD, pro se.

George W. Maugans, U.S. Immigration & Naturalization Service, Baltimore, MD, for Respondents.

## MEMORANDUM

MOTZ, Chief Judge.

Petitioner Albert Agha Ngwana appeals the United States Immigration and Natu-

---

**20.** While there may be instances when torts arise out of contractual breaches, they are rare indeed. "A tort claim may be maintained only when the wrong ascribed to defendant ... is the gist of the action, the contract being collateral." *Mann v. J.E. Baker Co.,* 733 F.Supp. 885, 888 (M.D.Pa.1990)(applying Pennsylvania law) (citations omitted); *see also Jo–Ann's Launder Center, Inc. v. Chase Manhattan Bank,* 854 F.Supp. 387, 390–91 (D.Vi.1994). Here, the alleged breach of contract is the essence of the plaintiff's cause of action, with the tort claims, if any, being collateral.

The Court does not reach defendants' other argument that Count IX should be dismissed because of the exclusivity of the Workers' Compensation Act.

ralization Service's ("INS") denial of his application for naturalization as a citizen of the United States. Respondents the Attorney General of the United States and the District Director of INS have filed a motion to dismiss or, in the alternative, to hold the case in abeyance. For the reasons stated below, the motion will be denied.

I.

Petitioner Albert Agha Ngwana is a citizen of the Republic of Cameroon. He first came to the United States in January 1981 as a student. He earned a Bachelor of Arts in economics in December 1982 and began a joint JD/MBA program at St. John's University in 1983. Mr. Ngwana earned his Juris Doctor in 1986 and his MBA in 1989.

Mr. Ngwana married a United States citizen on November 11, 1988. On November 27, 1991, Mr. Ngwana filed an Application for Immigrant Visa and Alien Registration with the United States Consulate in London, England. Mr. Ngwana represented in his application that upon entering the United States, he was going to live with his wife in Arlington, Virginia. The application was approved, and Mr. Ngwana entered the United States as an immigrant on December 18, 1991.

Mr. Ngwana and his wife subsequently divorced. The divorce court made a finding of fact that Mr. Ngwana and his wife had lived separate and apart since November 15, 1991, which was approximately two weeks before the date on which Mr. Ngwana represented in his immigrant visa application that he was coming to the United States to live with his wife.

Mr. Ngwana filed an Application for Naturalization on September 20, 1996. On June 17, 1998, INS denied his application on the ground that he concealed a material fact at the time of his immigration to the

United States by representing on November 27, 1991 that he was living with his wife when in fact he was living apart from his wife as of November 15, 1991. INS based its decision on the divorce court's finding of fact regarding the date of Mr. Ngwana's separation from his wife.

INS began deportation proceedings against Mr. Ngwana on July 2, 1998, charging him as being deportable as an alien who fraudulently procured a visa. On October 5, 1998, the divorce court issued an Amended Findings of Fact, Conclusions of Law and Judgment of Absolute Divorce pursuant to a joint motion filed by Mr. Ngwana and his former wife, in which it found that Mr. Ngwana and his wife separated on June 15, 1992. Mr. Ngwana's deportation hearing is scheduled for later this month.

II.

Respondents have moved to dismiss for lack of subject matter jurisdiction. To analyze their argument properly, a brief history of immigration law is necessary. Until 1990, United States District Courts were vested with exclusive jurisdiction to naturalize aliens as citizens of the United States. 8 U.S.C. § 1421 (amended 1990). A district court was, however, prohibited from naturalizing an alien against whom there was pending a deportation proceeding pursuant to a warrant of arrest. 8 U.S.C. § 1429 (amended 1990) ("no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest ...; and no petition for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a deportation proceeding pursuant to a warrant of arrest").[1]

This "priority provision" was intended to prevent "a race between the alien to gain citizenship and the Attorney General to deport him." *Shomberg v. United States,*

---

1. An order to show cause issued in a deportation proceeding is regarded as a warrant of arrest. 8 C.F.R. § 318.1

348 U.S. 540, 544, 75 S.Ct. 509, 99 L.Ed. 624 (1955). "The practice previous to the enactment of a priority provision ... was for both the deportation and naturalization processes to proceed along together until either petitioner's deportation or naturalization *ipso facto* terminated the possibility of the other occurring." *Id.* at 543, 75 S.Ct. 509. Accordingly, a district court was without subject matter jurisdiction to entertain a petition for naturalization when a deportation proceeding was pending against the petitioner. *See United States v. Ali,* 757 F.Supp. 710, 713–14 (W.D.Va. 1991) (decided under pre–1990 statute).

The Immigration Act of 1990, Pub.L. No. 101–649, § 401, 104 Stat. 4978, overhauled the naturalization process, removing naturalization from the courts and vesting the Attorney General with "sole authority to naturalize persons as citizens of the United States." 8 U.S.C. § 1421(a). Section 401 of the Act created a process for district court judicial review of denied applications for naturalization. 8 U.S.C. § 1421(c). "Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." 8 U.S.C. § 1421(c).

Section 1429 was amended to reflect the shift from judicial to administrative naturalization proceedings. Its current form prohibits the Attorney General from entertaining a naturalization request by an alien against whom deportation proceedings are pending: "no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest ...; and no petition for naturalization shall be *considered by the Attorney General* if there is pending against the petitioner a deportation proceeding pursuant to a warrant of arrest." 8 U.S.C. § 1429 (emphasis added).

INS argues that under the revised naturalization scheme, section 1429 operates to divest district courts of the jurisdiction section 1421(c) provides to review administrative denials of naturalization applications. This is somewhat of a novel issue, and the few courts that have addressed the question have disagreed. *Compare Mosleh v. Strapp,* 992 F.Supp. 874, 876 (N.D.Tex.1998) (holding that district courts lack jurisdiction to review denied applications when deportation proceedings are pending) *with Gatcliffe v. Reno,* 23 F.Supp.2d 581, 582–83 (D.Vi.1998) (holding that section 1429 does not divest district court of jurisdiction when deportation proceedings are pending). I am persuaded that section 1429 does not divest this Court of its subject matter jurisdiction to review INS's denial of Mr. Ngwana's application for naturalization despite the pending deportation proceeding against him.

The plain language of section 1429 prohibits (1) the naturalization of an alien against whom there is outstanding a *final finding of deportability,* and (2) precludes the *Attorney General* from considering a *petition for naturalization* by an alien against whom deportation proceedings are pending. The priority provision now operates to prevent the Attorney General from reviewing a naturalization application of an alien against whom removal proceedings have been instituted. Section 1429 simply has no relevance to district court jurisdiction to review the administrative denial of a naturalization application under the revised immigration laws. Rather, Congress clearly expressed its intent in section 1421(c) that such denials be subject to de novo judicial review and did not limit the jurisdiction of the district courts to entertain such appeals. Accordingly, I find that the Court has subject matter jurisdiction under 8 U.S.C. § 1421(c) to entertain the pending petition.

This finding is especially appropriate given the consequences of a contrary holding. If section 1429 divested district courts of jurisdiction to review denials of naturalization applications, INS could effectively circumvent the congressionally

**322**

mandated de novo judicial review of naturalization decisions simply by initiating removal proceedings pursuant to 8 U.S.C. § 1229. Appellate review of removal decisions is extremely limited. An immigration judge's finding of deportability may be administratively appealed to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 240.15. If the BIA affirms the decision, the alien's right to judicial review exists directly to, and exclusively in, the Circuit Courts of Appeals. 8 U.S.C. § 1252(b)(2). The Court of Appeals is required to decide the petition on the administrative record, is prohibited from taking additional evidence, and must accept administrative findings of fact as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4).

Thus, in sharp contrast to the de novo hearing to which petitioners are entitled when appealing naturalization decisions, deportation appeals are decided under a deferential standard. If section 1429 stripped district courts of the jurisdiction to review naturalization denials given by section 1421(c), INS could effectively circumvent section 1421(c) entirely by moving to remove an alien after rejecting his application for naturalization. Under INS's reading of the statutes, no district court could then review the naturalization decision.

### III.

■ Respondents also move to dismiss on the ground that Mr. Ngwana failed to state a claim upon which relief can be granted. The crux of their argument is that even if Mr. Ngwana were successful on the merits, this Court would be unable to grant the relief he has requested. In his complaint, Mr. Ngwana requests that the Court grant his application for naturalization and administer the oath of allegiance. Respondents correctly point out that the Court lacks the authority to grant petitioner's application and administer the oath of allegiance. 8 U.S.C. § 1421(a)

(granting Attorney General "sole authority to naturalize persons as citizens of the United States"). Pursuant to the liberal construction to be afforded pro se litigants, however, I will interpret his prayer for relief as a request to order the Attorney General to grant his naturalization application. *See Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir.1978).

Respondents argue that the Court lacks the authority to grant this relief as well because INS would be unable to comply with it as a matter of law. I disagree. The Attorney General is prohibited from considering a "petition for naturalization" if deportation proceedings are pending against the petitioner. 8 U.S.C. § 1429. Mr. Ngwana's petition for naturalization has already been considered and rejected administratively. Section 1429's prohibition on the Attorney General is thus inapplicable. Section 1429 also prohibits the naturalization of an alien against whom there is outstanding a "final finding of deportability." No such final finding currently exists. Thus, the Attorney General would not be prohibited from naturalizing Mr. Ngwana if this Court finds that INS erred in it decision to deny his application.

### IV.

Respondents request that I hold Mr. Ngwana's petition in abeyance until the conclusion of his administrative removal proceedings. I will decline to do so. Congress has provided for de novo judicial review of administrative denials of applications for naturalization subject only to the prohibition against the naturalization of aliens against whom final orders of deportation are pending. Mr. Ngwana does not have a final order of deportation pending against him. Thus, there is no basis on which to refuse to implement the statutory judicial review process envisioned by 8 U.S.C. § 1421(c).