Danil APOKARINA, Plaintiff,

v.

John ASHCROFT, et al., Defendants.

No. CIV.A. 02–210.

United States District Court,
E.D. Pennsylvania.

Nov. 4, 2002.

James J. Orlow, Philadelphia, PA, for Plaintiff.

James G. Sheehan, Philadelphia, PA, Susan R. Becker, United States Attorney Assistant United States Attorney, Philadelphia, PA, for Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff Danil Apokarina ("plaintiff") is a permanent resident of the United States. On June 27, 1996, the Immigration and Naturalization Service ("INS") began removal proceedings against plaintiff based on plaintiff's criminal convictions. On February 23, 1999, while the removal proceedings were still pending, plaintiff submitted a petition for naturalization. On July 7, 2000, the INS District Director denied the naturalization petition on the ground that he had no authority to consider the naturalization petition while a removal proceeding was pending.[1] After a hearing on January 18, 2001, the INS District Director, once again, denied plaintiff's naturalization petition.

On July 15, 2002, plaintiff filed the instant action seeking a declaration that plaintiff is of good moral character, and that "but for" the pending deportation pro-

---

1. The INS, through the District Director, exercises the authority of the Attorney General concerning matters of immigration and naturalization. *See Jean v. Nelson,* 472 U.S. 846, 860, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985).

ceedings, plaintiff is eligible for naturalization. The defendant has moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim.

The controversy at issue here lies at the intersection of what plaintiff claims are two seemingly conflicting congressional mandates. While on the one hand, Congress has limited the Attorney General's power to consider petitions for naturalization[2] when a removal proceeding against the petitioner is pending, 8 U.S.C. § 1429, on the other hand, it has authorized district courts to conduct *de novo* review of the denial of petitions for naturalization. 8 U.S.C. § 1421(c). The precise issue before the court is whether section 1429, which limits the Attorney General's power to consider naturalization petitions while a removal proceeding is pending against the petitioner, similarly limits the district court's jurisdiction to review naturalization petitions that were denied by the Attorney General on the basis that removal proceedings were pending against the petitioner.

A brief history is helpful in placing the two statutes at issue in the context of the overall statutory scheme. Until 1990, United States District Courts were vested with exclusive jurisdiction to naturalize aliens as citizens of the United States. 8 U.S.C. § 1421 (amended 1990). A district court was, however, prohibited from naturalizing an alien against whom there was pending a deportation proceeding pursuant to a warrant of arrest.[3] *See* 8 U.S.C. § 1429 (amended 1990).[4] The legislative purpose behind this limitation was to prevent "a race between the alien to gain citizenship and the Attorney General to deport him." *Shomberg v. United States,* 348 U.S. 540, 544, 75 S.Ct. 509, 99 L.Ed. 624 (1955).[5] Thus, Congress intentionally separated deportation and naturalization proceedings, giving priority to deportation. *See In re Petition of Terzich,* 256 F.2d 197, 200 (3d Cir.1958); *See also Tellez v. INS,*

---

2. Courts use the terms "application" and "petition," as well as "applicant" and "petitioner" interchangeably and somewhat indiscriminately. Perhaps this is a result of Congress's transfer of the power to naturalize aliens from the district courts to the Attorney General. Use of the terms "petition" and "petitioner" was appropriate when petitions for naturalization were brought before the courts. *See, e.g., In re Petition of Terzich,* 256 F.2d 197 (3d Cir.1958). In 1990, the power to naturalize was transferred to the Attorney General and exercised by an administrative agency, the INS. Accordingly, use of the terms "application" and "applicant" became perhaps more appropriate. *See, e.g., Tellez v. INS,* 91 F.Supp.2d 1356, (C.D.Cal.2000).

The court can discern no substantive difference between an "application" and a "petition" in this context. Thus, for the sake of uniformity, the court will refer to the request for naturalization as a "petition" and the person making the request as the "petitioner."

3. An order to show cause issued in a deportation proceeding is regarded as a warrant of arrest. 8 C.F.R. § 318.1

4. Section 1429 provided, in pertinent part:

no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest ...; and no petition for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a deportation proceeding pursuant to a warrant of arrest.

8 U.S.C. § 1429 (amended 1990).

5. This "race" was occurring, as a result of the interrelationship of naturalization and deportation. Once a person is naturalized as a citizen of the United States, the person may not be deported. On the other hand, once a noncitizen is deported, they may not be naturalized. *See Shomberg v. United States,* 348 U.S. 540, 543–44, 75 S.Ct. 509, 99 L.Ed. 624 (1955). Thus, before section 1429 was enacted, the common practice "was for both the deportation and naturalization processes to proceed along together until either the petitioner's deportation or naturalization *ipso facto* terminated the possibility of the other occurring." *Id.*

91 F.Supp.2d 1356, 1361 (C.D.Cal.2000); *United States v. Ali*, 757 F.Supp. 710, 713 (W.D.Va.1991). Ergo, under prior practice, a district court was without jurisdiction to consider a petition for naturalization when a deportation proceeding was pending against the petitioner. *See Shomberg*, 348 U.S. at 544, 75 S.Ct. 509; *see also In re Petition of Terzich*, 256 F.2d at 199–200.

In 1990, Congress removed from the courts the authority to naturalize, bestowing upon the Attorney General "[t]he sole authority to naturalize persons as citizens of the United States." [6] 8 U.S.C. § 1421(a). District courts, however, were given the authority to conduct *de novo* review of denials of applications for naturalization. *See* 8 U.S.C. § 1421(c).[7] In accordance with these changes, section 1429 was amended to reflect the shift from judicial to administrative naturalization proceedings, providing, in pertinent part, that "no [petition] for naturalization shall be considered by the Attorney General if there is pending against [petitioner] a removal proceeding pursuant to a warrant of arrest."[8] 8 U.S.C. § 1429. To put it another way, the limitation under prior practice on the district courts' power to consider naturalization petitions while a removal proceeding against the petitioner was pending was simply imported into the current practice to correspondingly limit the power of the Attorney General.

Under the current statutory scheme, the Attorney General is prohibited, just as the district courts were prohibited under prior practice, from considering an application for naturalization when a removal proceeding is pending against the applicant. 8 U.S.C. § 1429. In turn, the jurisdiction of the district courts in the naturalization process is limited to a review of the Attorney General's decision to deny a petition for naturalization. 8 U.S.C. § 1421(c). It necessarily follows that the district court's scope of review of the denial of a naturalization petition, pursuant to section 1421(c), cannot be any greater than the authority of the Attorney General to consider the petition in the first place.[9] *See* 8 U.S.C. § 1429. Consequently, the district court's jurisdiction to conduct a *de novo* review under section 1421(c) is limited to a review of the determination by the Attorney General that a removal proceeding is, in fact, pending against the petitioner. Because, in this case, it is undisputed that a removal proceeding against plaintiff was pending, the court lacks jurisdiction to consider the plaintiff's request for review of his petition for naturalization on any other grounds, including his moral fitness.[10]

---

**6.** In 1990, Congress passed the Immigration Act of 1990 ("1990 Act"), Public Law No. 101–649, § 401, 104 Stat. 4978 which transferred the authority to naturalize from the courts to the Attorney General.

**7.** Section 1421(c) provides, in pertinent part:

A person whose application for naturalization ... is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides .... Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c).

**8.** *See supra* note 3.

**9.** Pursuant to section 1429, the authority and discretion of the Attorney General is limited to making a determination whether or not removal proceedings are pending against the petitioner. Once it is determined that a removal proceeding is pending, the authority of the Attorney General to consider the petition for naturalization vanishes.

**10.** The decision of the court is consistent with the majority view. In *Tellez v. INS*, 91

Plaintiff relies on *Matter of Cruz*, 15 I. & N. Dec. 236 (B.I.A. April 3, 1975), a decision of the Board of Immigration Appeals, where it was suggested that district courts had jurisdiction to find that an alien was "eligible for naturalization but for the pendency of deportation proceedings or the existence of an outstanding order of deportation."[11] *Id.* at 237. *Cruz* is not persuasive. As stated by the Seventh Circuit, "only Congress—not an administrative agency—can confer jurisdiction on a federal court. *Cruz* cites no jurisdictional basis for its holding and was decided at a time when district courts had exclusive jurisdiction to grant or deny applications for naturalization." *Levy v. INS*, 6 Fed. Appx. 331, 332–33 (7th Cir.2001) (internal citations omitted).

Plaintiff also relies on two district court decisions. The first case, *Ngwana v. Attorney General of the United States*, 40 F.Supp.2d 319 (D.Md.1999), examines a related but distinct issue. In *Ngwana*, the INS began removal proceedings *after* the applicant's naturalization petition was denied. *Ngwana*, 40 F.Supp.2d at 320. The United States District Court for the District of Maryland held that section 1429 does not divest the district court of jurisdiction to review the denial of a petition for naturalization where the removal proceeding was commenced after the petition for naturalization had been denied. *Id.* at 321–22. Since in *Ngwana*, the removal proceedings were not pending while the petition for naturalization was denied, *Ngwana* is distinguishable.[12]

The second case, *Gatcliffe v. Reno*, 23 F.Supp.2d 581(D.Vi.1998), on facts substantially similar to those here, held that

---

F.Supp.2d 1356, 1362 (C.D.Cal.2000), the court dismissed plaintiff's complaint seeking *de novo* review of a denial of a naturalization application for lack of subject matter jurisdiction under section 1429, noting that the legislative purpose of the statute was "to give priority to deportation/removal proceedings over naturalization proceedings" and to "prevent a race between an alien, seeking to be naturalized, and immigration authorities who needed to complete removal proceedings." *Id.; see also Mendonca v. INS*, 52 F.Supp.2d 155, 163–64 (D.Mass.1999) (no subject matter jurisdiction to order plaintiff naturalized because plaintiff was subject to a final deportation order and thus jurisdiction was barred by § 1429); *Mosleh v. Strapp*, 992 F.Supp. 874, 876 (N.D.Tex.1998) (section 1429 divests court of naturalization jurisdiction that could otherwise be exercised). *Cf. In re Petition of Terzich*, 256 F.2d 197, 198 (3d Cir.1958) (final order of deportation strips federal courts of jurisdiction to naturalize).

11. The decision states, in pertinent part:

Although we adjudicate claims to citizenship and to eligibility for citizenship, if germane to a proceeding within our jurisdiction, neither we nor immigration judges have authority with respect to the naturalization of aliens. We will therefore decline to entertain the question of whether an alien is eligible for naturalization for purposes of termination under 8 C.F.R. § 242.7 [predecessor to 8 U.S.C. § 232.2(f) ].
*Matter of Cruz*, 15 I. & N. Dec. 236, 237 (B.I.A. April 3, 1975).

12. In *Ngwana*, the court noted that: "If section 1429 divested district courts of jurisdiction to review denials of naturalization applications, INS could effectively circumvent the congressionally mandated de novo judicial review of naturalization decisions simply by initiating removal proceedings pursuant to 8 U.S.C. § 1229." *Ngwana*, 40 F.Supp.2d at 321–22.

In the instant case, unlike *Ngwana*, the Service did not commence removal proceedings to thwart plaintiff's application for naturalization; rather, plaintiff petitioned for naturalization *after* the deportation proceedings had commenced. Thus, the court's concerns in *Ngwana* are not at issue in this case.

To the contrary, once removal proceedings are commenced, allowing district courts to exercise jurisdiction when naturalization applications are submitted after removal has commenced, would allow aliens to frustrate their removal proceedings by merely submitting a naturalization petition.

the district courts may exercise jurisdiction to review naturalization petitions filed after the institution of removal proceedings. *Gatcliffe*, 23 F.Supp.2d at 582–83. The court reasoned that because section 1421(c) provides for judicial review of an administrative INS decision and does not provide that the court has the power to naturalize an applicant, Gatcliffe's request to hold a hearing in the district court is compatible with section 1429.[13] *Id.* at 583. The *Gatcliffe* court appears to base its reasoning on the fact that Gatcliffe was not seeking naturalization by the district court, but rather a *de novo* review of the naturalization petition. The court finds that *Gatcliffe* failed to fully import the mandate of section 1429 that the Attorney General has no power even to consider the naturalization petition. The fact that plaintiff was not seeking naturalization in the district court is irrelevant given that section 1429 bars consideration of a petition for naturalization, whether by the Attorney General or by the district courts, while a removal proceeding is pending.

For the reasons stated above, the complaint will be dismissed for lack of subject matter jurisdiction.[14]

An appropriate order follows.

### ORDER

**AND NOW**, this 4th day of **November, 2002**, upon consideration of defendants' Motion to Dismiss (doc. no. 9) and pursuant to the court's memorandum dated November 4th, 2002, it is hereby **ORDERED** that the motion is **GRANTED** and the case is **DISMISSED** for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

### AND IT IS SO ORDERED.

13. The court further explained that:
 If this Court finds [Gatcliffe] to be of good moral character, he has established prima facie eligibility for naturalization but for the deportation proceedings and can move to terminate the deportation/removal proceedings.... Thus, there is no race to naturalization. Section 1421(c) merely provides for judicial review of an administrative INS decision.

14. Because the court lacks jurisdiction over plaintiff's claims, the court will not inquire into defendants motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).