# In re Victor ACOSTA HIDALGO, Respondent

File A36 822 586 - New York

*Decided March 8, 2007*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Because the Board of Immigration Appeals and the Immigration Judges lack jurisdiction to adjudicate applications for naturalization, removal proceedings may only be terminated pursuant to 8 C.F.R. § 1239.2(f) (2006) where the Department of Homeland Security has presented an affirmative communication attesting to an alien's prima facie eligibility for naturalization. *Matter of Cruz*, 15 I&N Dec. 236 (BIA 1975), reaffirmed.

(2) An adjudication by the Department of Homeland Security on the merits of an alien's naturalization application while removal proceedings are pending is not an affirmative communication of the alien's prima facie eligibility for naturalization that would permit termination of proceedings under 8 C.F.R. § 1239.2(f).

FOR RESPONDENT: H. Raymond Fasano, Esquire, New York, New York

BEFORE: Board Panel: COLE and PAULEY, Board Members. Concurring and Dissenting Opinion: FILPPU, Board Member.

PAULEY, Board Member:

This case was last before us on May 4, 2004, when we sustained the appeal of the Department of Homeland Security ("DHS," formerly the Immigration and Naturalization Service)[1] from an Immigration Judge's December 22, 2003, decision to terminate proceedings pursuant to 8 C.F.R. § 1239.2(f) (2003)[2] in order to allow the respondent to pursue an application for

---

[1] The functions of the Immigration and Naturalization Service have been transferred to the Department of Homeland Security pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. The transfer occurred on March 1, 2003. *See Matter of D-J-*, 23 I&N Dec. 572, 573 n.1 (A.G. 2003).

[2] The regulation at 8 C.F.R. § 1239.2(f) states the following:

> An immigration judge may terminate removal proceedings to permit the alien to proceed to a final hearing on a pending application or petition for naturalization *when the alien has established prima facie eligibility for naturalization and the matter involves exceptionally appealing or humanitarian factors*; in every other case, the removal hearing shall be completed as promptly as possible notwithstanding the pendency of an application for naturalization during any state of the proceedings.

(Emphasis added.)

naturalization.[3]  In a decision dated April 6, 2006, the United States Court of Appeals for the Second Circuit vacated our May 4, 2004, decision and remanded the record for a thorough analysis of the questions whether (1) an Immigration Judge may terminate proceedings pursuant to 8 C.F.R. § 1239.2(f) without an affirmative communication from a Federal district court or the DHS; (2) the Immigration Judge has jurisdiction to determine if the respondent is prima facie eligible for naturalization; and (3) *Matter of Cruz*, 15 I&N Dec. 236 (BIA 1975), on which we previously relied, remains applicable.  Both parties were given the opportunity to brief these issues, although only the respondent filed a brief.

The respondent is a native and citizen of the Dominican Republic who entered the United States as a lawful permanent resident on August 7, 1980. In his brief he directs his arguments primarily to the third issue articulated by the Second Circuit, i.e., whether *Matter of Cruz*, *supra*, is applicable in removal cases.  In that case we considered 8 C.F.R. § 242.7 (1975), which is the predecessor to the current regulation and is essentially identical to it. Noting that neither we nor the Immigration Judges have authority over naturalization, we declined to determine the question of an alien's prima facie eligibility for naturalization for purposes of termination under the regulation. We further held that deportation proceedings could only be terminated to allow an alien to proceed with an application for naturalization if prima facie eligibility for naturalization was established by an affirmative communication from the Service or by a court's declaration that the alien would be eligible but for the pendency of the deportation proceedings.

According to the respondent, *Matter of Cruz*, *supra*, is no longer good law because the alien in that case was in deportation, rather than removal, proceedings and the case involved an unusual situation of Filipino military veterans seeking naturalization.  The respondent also asserts that even under *Matter of Cruz*, *supra*, the DHS had, in essence, affirmatively communicated to the Immigration Judge that the respondent was prima facie eligible for relief by adjudicating his naturalization application on the merits and accepting his appeal of that decision.  The respondent therefore contends that the Immigration Judge properly terminated proceedings in order to allow him to proceed with his appeal of the denial of naturalization.  Finally, the respondent asserts that our previous reliance on *Nolan v. Holmes*, 334 F.3d 189 (2d Cir. 2003), to find the Immigration Judge's termination of proceedings invalid was

---

[3]  Previously, on March 13, 2002, we remanded the record to the Immigration Judge for a determination whether the respondent had established exceptionally appealing or humanitarian factors, which were required to support the Immigration Judge's October 23, 1998, decision to terminate proceedings under 8 C.F.R. § 1239.2(f) based on the respondent's application for naturalization.

misplaced because that case actually supports the determination that the Immigration Judge has authority to determine prima facie eligibility for naturalization.[4]

We acknowledge that since the time of *Matter of Cruz*, *supra*, changes in immigration law divested the United States district courts of jurisdiction to grant or deny applications for naturalization in the first instance. In fact, the district courts now have jurisdiction only in cases where the DHS has denied such an application. Section 310(c) of the Immigration and Nationality Act, 8 U.S.C. § 1421(c) (2000); *see also* section 336 of the Act, 8 U.S.C. § 1447 (2000). Therefore, *Matter of Cruz*, which held that a declaration by a district court could establish an alien's prima facie eligibility for naturalization, does not accurately reflect the current state of naturalization law.[5] *See* section 310(a) of the Act (vesting the Attorney General with exclusive authority over naturalization proceedings); *see also Zayed v. United States*, 368 F.3d 902, 905-06 (6th Cir. 2004); *Apokarina v. Ashcroft*, 232 F.Supp.2d 414, 415-17 (E.D. Pa. 2002) (providing a brief history of the change in law).

Nevertheless, in our view, the fact that the Federal courts no longer have authority to make decisions as to an alien's prima facie eligibility for citizenship does not undermine *Matter of Cruz*, which we have continued to cite in adjudicating requests for termination pursuant to 8 C.F.R. § 1239.2(f).[6] The regulation at 8 C.F.R. § 242.7(a), which we considered in that case, was essentially identical to the current regulation. Furthermore, neither the Board nor the Immigration Judges have jurisdiction to determine an alien's eligibility

---

[4] The respondent correctly points out that in *Nolan v. Holmes*, *supra*, at 202-03, the Second Circuit apparently accepted that an Immigration Judge has the authority to determine whether an alien has met the good moral character requirement for establishing prima facie eligibility for naturalization. Nevertheless, the Second Circuit did not view such a finding as "independent" of the Board's procedural requirement for such a finding, as articulated in *Matter of Cruz*, *supra*.

[5] In fact, several Federal courts have questioned whether *Matter of Cruz*, *supra*, remains good law following the above-noted changes. *See, e.g.*, *Cuong Quang Le v. McNamee*, 2006 WL 3004524 (D. Or. Oct. 20, 2006) (noting other cases where the viability of *Matter of Cruz* has been questioned).

[6] We do not suggest that our decision in *Matter of Cruz*, or our continuing reliance on that case, confers jurisdiction on a Federal court to issue an affirmative declaration of eligibility for naturalization. *See Apokarina v. Ashcroft*, *supra*, at 417 (finding *Matter of Cruz* unpersuasive with regard to the alien's argument that the court could issue such a determination, stating that "'only Congress–not an administrative agency–can confer jurisdiction on a federal court.'" (quoting *Levy v. INS*, 6 Fed. Appx. 331, 332-33 (7th Cir. 2001))).

for naturalization, which now lies exclusively with the DHS.[7]  Because the same circumstances that were present in *Matter of Cruz* still exist today, we conclude that the decision remains applicable to the respondent's case.  We therefore find that neither we nor the Immigration Judges have authority to determine his prima facie eligibility for naturalization in order to terminate removal proceedings pursuant to 8 C.F.R. § 1239.2(f).[8]  Accordingly, it is appropriate for the Board and the Immigration Judges to require some form of affirmative communication from the DHS prior to terminating proceedings based on his pending naturalization application.  *Accord Cuong Quang Le v. McNamee*, 2006 WL 3004524 (D. Or. Oct. 20, 2006).

　　Although we have no jurisdiction to review a DHS naturalization ruling, we note that the DHS improperly reached the merits of the respondent's application for naturalization.  According to section 318 of the Act, 8 U.S.C. § 1429 (2000), "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this or any other Act."  *See* 8 C.F.R. § 318.1 (2006) (stating that a notice to appear shall be regarded as a warrant of arrest).  In any case, we do not regard the

---

[7] We do, however, adjudicate claims to citizenship and eligibility for citizenship if germane to proceedings within our jurisdiction.  Furthermore, Immigration Judges may preside over public ceremonies of naturalization and administer oaths of allegiance at such ceremonies, but their role in naturalization in this regard is purely ceremonial.  *See* 8 C.F.R. § 1337.2 (2006).

[8] Some issues bearing on eligibility for naturalization, such as good moral character, overlap matters that regularly arise before Immigration Judges.  However, other requirements for naturalization raise difficult questions regarding eligibility, such as those reflected in *Matter of Cruz*, *supra*.  Because of the nature of those questions, it is not appropriate for the Immigration Judges and the Board to make determinations regarding matters on which we have no expertise and over which we lack jurisdiction.  We note a distinction between this case and others in which applications on separate adjudicative tracks may affect an alien's ability to remain in the United States, but where we ultimately retain jurisdiction over a portion of an application and therefore have developed a relative expertise on issues over which we do not have jurisdiction.  For example, in the case of an adjustment of status application filed in removal proceedings, we lack jurisdiction over a key element of that application–the visa petition–but clearly have authority to determine whether the respondent has established evidence of a bona fide marriage in order to continue the case until DHS adjudicates the visa petition filed by the alien's spouse.  *See Ahmed v. Gonzales*, 465 F.3d 806 (7th Cir. 2006); *Benslimane v. Gonzales*, 430 F.3d 828 (7th Cir. 2005); *see also Matter of Velarde*, 23 I&N Dec. 253 (BIA 2002).

DHS's adjudication of the respondent's application as an *affirmative communication* of his prima facie eligibility.[9]

Our findings in this regard are grounded in our recognition that the DHS's authority to adjudicate naturalization applications was limited by Congress in order to "prevent 'a race between the alien to gain citizenship and the Attorney General to deport him.'" *Apokarina v. Ashcroft*, *supra*, at 415 (quoting *Shomberg v. United States*, 348 U.S. 540, 544 (1955)).[10] Congress's purpose was "'to give priority to deportation/removal proceedings over naturalization proceedings' and to 'prevent a race between an alien, seeking to be naturalized, and immigration authorities who needed to complete removal proceedings.'" *Apokarina v. Ashcroft*, *supra*, at 416, n.10 (quoting *Tellez v. INS*, 91 F.Supp.2d 1356, 1362 (C.D. Cal. 2000)); *see also Zayed v. United States*, *supra*, at 905-06 ("We are aware of no suggestion that Congress intended the priority of removal proceedings over naturalization proceedings to be altered by the 1990 amendments."); *Mendonca v. INS*, 52 F.Supp.2d 155, 163-64 (D. Mass. 1999).

We do not have authority to compel the DHS to acknowledge the respondent's eligibility for naturalization. *See Cuong Quang Le v. McNamee*, *supra* (noting that it is within the DHS's discretion to decide an alien's prima facie eligibility for naturalization). Nor can we sanction the agency for improperly entertaining the respondent's naturalization application on the merits while also prosecuting him in removal proceedings.[11] At any rate, as delegatees of authority given to the Attorney General by Congress, we must remain true to the legislature's intent in drafting provisions of the Immigration and Nationality Act. Therefore, despite any missteps by the DHS, we must give priority to that agency's decision to institute removal proceedings. In sum, we cannot find any error in our previous decision to rule that the Immigration Judge's decision to terminate proceedings was erroneous, absent some affirmative communication regarding the respondent's prima facie

---

[9] Although the respondent contends that the erroneous adjudication of his naturalization application by the DHS was an implicit communication that it found him prima facie eligible, we find that the adjudication was simply a legal mistake as to its authority. Moreover, in view of DHS's ultimate denial of the application, we perceive no implicit finding or communication as to the respondent's prima facie eligibility in that denial.

[10] The court in *Apokarina v. Ashcroft*, *supra*, at 416 n.5, explained that "[t]his 'race' was occurring, as a result of the interrelationship of naturalization and deportation. Once a person is naturalized as a citizen of the United States, the person may not be deported. On the other hand, once a noncitizen is deported, they (sic) may not be naturalized."

[11] We note that at least one court has opined that these circumstances would not divest the courts of jurisdiction to review de novo the DHS's decision to deny naturalization. *See Zayed v. United States*, *supra*, at 906 n.5 (citing *Ngwana v. Att'y Gen. of U.S.*, 40 F.Supp.2d 319 (D. Md. 1999)).

eligibility for naturalization from the DHS. Accordingly, we will sustain the DHS's appeal, vacate the Immigration Judge's decision to terminate proceedings, and remand the record to the Immigration Judge for further proceedings.

Finally, we observe that the concurring and dissenting opinion of Board Member Filppu is not without some force in its observation that *Matter of Cruz*, *supra*, allows the DHS to prevent a termination of proceedings merely by its silence. However, the alternative approach suggested in that opinion also has problems. Among other things, it would interject a novel standard of uncertain application, because the Board would need to determine whether DHS has made a "nonfrivolous" argument or has advanced a "respectable position" that an alien lacks naturalization eligibility. It would require the Immigration Judges and the Board to render decisions on an alien's prima facie eligibility for naturalization where we not only lack jurisdiction over the ultimate issue, but may also lack expertise as to the specific issue regarding prima facie eligibility. This would make it difficult to judge the respectability or frivolousness of the DHS's contentions. On balance, therefore, we find that the approach in the separate opinion presents a less appropriate one than that developed in *Matter of Cruz*, *supra*, which we reaffirm today.

**ORDER:** The appeal of the Department of Homeland Security is sustained.

**FURTHER ORDER:** The decision of the Immigration Judge is vacated, and the record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion.

*CONCURRING AND DISSENTING OPINION*: Lauri Steven Filppu, Board Member

I concur and join the majority's opinion in its determination that the adjudication of the respondent's naturalization application by the Department of Homeland Security ("DHS") was not an "affirmative communication" of his eligibility for naturalization. If anything, I would construe the DHS' denial of that application as a reflection that DHS considers the respondent not to be eligible for naturalization. Hence, I agree that termination of removal proceedings under 8 C.F.R. § 1239.2(f) (2006) is not appropriate.

I dissent, however, from the reaffirmation of the rule announced in *Matter of Cruz*, 15 I&N Dec. 236 (BIA 1975). The rule adopted in *Matter of Cruz* stems from the fact that Immigration Judges and the Board lack jurisdiction over naturalization applications and from the fact that exceedingly complex issues can arise in such applications. Indeed, *Matter of Cruz* itself arose out of the litigation by Filipino veterans of World War II who sought

naturalization under expired legislation by virtue of claims that the United States Government had acted improperly in administering that long expired special naturalization statute. The knotty naturalization issues underlying *Matter of Cruz* led to three Supreme Court decisions, *INS v. Pangilinan*, 486 U.S. 875 (1988), *United States v. Mendoza*, 464 U.S. 154 (1984), and *U.S. INS v. Hibi*, 414 U.S. 5 (1973), and new legislation by Congress to restore naturalization authority for those veterans. *See* Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998, Pub. L. No. 105-119, § 112, 111 Stat. 2440, 2459-60; Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, § 104(d), 108 Stat. 4305, 4308; Immigration Act of 1990, Pub. L. No. 101-649, § 405, 104 Stat. 4978, 5039.

The difficulties that can be faced in assessing prima facie naturalization eligibility, as reflected in the Filipino war veteran litigation, might support a policy of precluding Immigration Judges and the Board from making any assessment of prima facie eligibility. The literal language of the regulation, however, does not point to such a limiting policy, even though the rule in *Matter of Cruz* is not foreclosed by that literal language. Further, there are many cases in which prima facie eligibility depends on questions that also are regularly within the expertise of Immigration Judges, such as issues of good moral character.

The regulation at 8 C.F.R. § 1239.2(f) provides in relevant part:

> An immigration judge may terminate removal proceedings to permit the alien to proceed to a final hearing on a pending application or petition for naturalization when the alien has established prima facie eligibility for naturalization and the matter involves exceptionally appealing or humanitarian factors . . . .

The difficulty with the rule in *Matter of Cruz*, as reaffirmed by the majority today, is that it gives the DHS complete veto power over a termination of removal proceedings through silence. In other words, the DHS is not required to articulate any objection to prima facie eligibility or to the strength of the humanitarian factors in the case. An alien's request is doomed by the mere refusal of the DHS to respond to the request in any way. And the statutory revisions respecting naturalization discussed by the majority mean that the district courts are very unlikely to be in a position to provide the needed "affirmative communication" as an alternative to the DHS.

In order to prevent this "veto by silence," I would allow the Immigration Judge to independently assess prima facie eligibility when the DHS fails to address the issue. To help guard against the problems that led to *Matter of Cruz*, I would also require the Immigration Judge to accede to any DHS objection that is based on a nonfrivolous position that the alien lacks naturalization eligibility. In other words, the Immigration Judge would be

required to defer to the DHS' judgment of naturalization eligibility, so long as the DHS articulates a respectable position, even if the Immigration Judge did not necessarily agree with that position. The Immigration Judge, after all, does not have naturalization authority, while the DHS does.

I also understand the statutory structure to favor the completion of removal proceedings over allowing naturalization claims to derail the removal process. It makes logical sense to force removable aliens to first seek any relief directly available in removal proceedings. If none is available, that suggests a congressional judgment that the particular alien should be removed from our midst and not be given United States citizenship instead.

But the regulation does permit termination of proceedings if there are *exceptionally* appealing or humanitarian factors present for a prima facie eligible alien. I have no quarrel with a rule that would restrictively apply the regulation. I do object, however, to an interpretation that gives the DHS the power to block any consideration of the regulation simply through silence.