**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 08-4104

———————————

NOEL VILMAR ROMERO,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

———————————

On Petition for Review from the Board of Immigration Appeals
BIA-1 No. A029-635-129
Immigration Judge: The Honorable Margaret Reichenberg

———————————

Argued June 21, 2010

Before: SMITH, FISHER, and COWEN, Circuit Judges

(Filed:  August 10, 2010)
_____

OPINION
_____

Francis X. Geier, Esq. (argued)
Anayancy R. Housman, Esq.
453 Westminster Avenue
Elizabeth, NJ 07208
*Counsel for Petitioner*

1

Christina B. Parascandola, Esq. (argued)
Benjamin J. Zeitlin, Esq.
Office of Immigration Litigation, Civil Division
United States Department of Justice
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044
*Counsel for Respondent*


SMITH, *Circuit Judge.*

An Immigration Judge ("IJ") found that Petitioner Noel Romero ("Noel") willfully misrepresented his criminal record in order to obtain lawful permanent resident status, and ordered his removal. The Board of Immigration Appeals ("BIA") dismissed Noel's appeal. Noel now petitions this Court for review. We have jurisdiction under 8 U.S.C. § 1252, subject to the qualifications explained in this opinion.[1] We will deny the petition.

I.

Noel, a native of Peru, entered the United States in August 1984. His B-2 visa expired in February of 1985, but he remained in this country well past that date. In June of 1995, he married Flavia Romero ("Flavia"), a naturalized American citizen. The couple had two children, both of whom are American citizens. On February 7, 1996, Flavia petitioned the INS for a visa for her husband based on their marriage. On the same day, Noel applied for adjustment of status to permanent resident by completing a Form I-485. This form asked

---

[1] We have considered and rejected the Attorney General's argument that we lack jurisdiction because no live case or controversy is presented.

whether Noel had "ever . . . . been arrested, cited, charged, indicted, fined, or imprisoned for breaking or violating any law or ordinance[.]" Noel answered "No," despite his prior convictions under New Jersey law for cocaine possession, assault, shoplifting, and receipt of stolen property. On July 10, 1996, his application for adjustment of status to lawful permanent resident was granted, albeit on a conditional basis. *See* Immigration and Nationality Act ("INA") § 216, 8 U.S.C. § 1186a.

On June 10, 1998, the Romeros jointly petitioned to remove the conditions on Noel's lawful resident status by filing a Form I-751. That form asked whether Noel, since becoming a conditional permanent resident, had "been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance[.]" Noel answered "No." This response was inaccurate, for he had again been convicted of shoplifting on March 12, 1997. On July 8, 1998, the INS granted the Romeros' petition and removed the conditions on Noel's permanent resident status.

On February 7, 2006, Noel arrived at Newark Airport on a flight returning from Peru. When he applied for admission as a lawful permanent resident, he was detained and served with a Notice to Appear ("NTA"). The NTA alleged that Noel was inadmissible and removable on four grounds: as an alien convicted of a crime involving moral turpitude ("CIMT"),[2] INA § 212(a)(2)(A)(i)(I); as an alien convicted of a controlled substance offense, *id.* § 212(a)(2)(A)(i)(II); as an alien who obtained an immigration benefit by fraud or willful

---

[2] Shoplifting is a CIMT. *Smirko v. Ashcroft*, 387 F.3d 279, 283 (3d Cir. 2004).

3

misrepresentation of material fact, *id.* § 212(a)(6)(C)(i); and as an intended immigrant who, at the time of his application for admission, lacked a valid, unexpired immigrant visa or other suitable entry document, *id.* § 212(a)(7)(A)(i). Noel conceded the first two grounds of inadmissibility—which were based on his shoplifting and cocaine convictions—but denied the latter two, which were based on his failure to disclose his criminal record on the I-485 and I-751 forms.

Noel and Flavia testified at a hearing before the IJ on October 31, 2006. Noel denied willfully misrepresenting his criminal record. He explained that he had not filled out the relevant forms himself, because he did not understand English at the time. Instead, he paid a Spanish-speaking legal secretary named Evelyn Rodas to complete the forms on his behalf. Noel testified that he only provided the information that Rodas asked him to supply, and that she never asked him if he had a criminal record. He admitted to signing the inaccurate forms, but only because Rodas told him to, and he trusted her because she had "done this for other people and it had come out well." Flavia's testimony was similar. She testified that Rodas had filled out both immigration forms on Noel's behalf, and that neither she nor any immigration official had ever asked whether Noel had a criminal record.

While his removal proceedings were pending, Noel filed a motion to terminate those proceedings under 8 C.F.R. § 1239.2(f). That regulation permits an IJ to terminate removal proceedings to permit an alien to receive a final hearing on a pending application for naturalization, provided the alien (1) has established prima facie eligibility for naturalization

4

and (2) the matter involves "exceptionally appealing or humanitarian factors[.]" The IJ stated that she would terminate removal proceedings if the Department of Homeland Security ("DHS") stipulated to termination. DHS did not so stipulate, and proceedings continued.

On March 28, 2007, the IJ ordered Noel's removal from the United States. She concluded that Noel had twice obtained immigration benefits by willfully misrepresenting material facts: first by failing to disclose his criminal record on the I-485 form, and later by failing to disclose his March 1997 shoplifting conviction on the I-751 form. The IJ rejected Noel's claim that his omissions were innocent mistakes. She apparently believed his claim that he had not filled out the forms himself, but found that he had willfully failed "to be candid [about his record] with those people that he chose to help him prepare his applications," including his wife and Rodas.

Finally, the IJ upheld the charge that Noel was inadmissible because he did not possess a valid entry document when he applied for admission at Newark Airport. *See* INA § 212(a)(7)(A)(i). She reasoned that Noel's lawful permanent resident card was not a "valid" entry document for purposes of admission because he had obtained it through fraud.

Based on these conclusions, the IJ held that Noel was inadmissible and removable on all four grounds alleged in the NTA. She also concluded that Noel was ineligible for the various forms of relief from removal he had requested, including cancellation of removal under INA § 240A and a waiver under (now-repealed) INA § 212(c).

On April 19, 2007, Noel filed a timely Notice of Appeal with the BIA. He did not file

5

a supporting brief, but he did complete the section of the form that required him to "State in Detail the Reasons for [the] Appeal." That statement read, in its entirety:

> We submit that the Court erred in finding that the Respondent was ineligible for the various applications for relief submitted in these proceedings. Despite finding the witnesses' testimony credible, the Court nevertheless found that the Respondent had wilfully misrepresented himself in obtaining lawful permanent residence, a finding unsupported by, and in fact contradicted by the record of proceedings. As a result of the Court's fraud finding, the Immigration Judge never even considered the Respondent's alternate applications for relief, including [INA Section] 212(c) relief and Cancellation of Removal, deeming him automatically ineligible. Neither did the Court grant the Respondent his motion for termination of proceedings for leave to pursue his application for naturalization. For these reasons, we appeal to the Board of Immigration Appeals.

The BIA dismissed the appeal, noting that Noel had presented no specific facts or legal arguments to support his claims of error. It also specifically endorsed the IJ's refusal to terminate removal proceedings so that Noel could pursue naturalization. It concluded that removal proceedings could not be terminated under § 1239.2(f) because Noel had obtained no affirmative communication from DHS attesting to his prima facie eligibility for naturalization. The BIA noted that § 1239.2(f), as interpreted in *Matter of Acosta-Hidalgo*, 24 I&N Dec. 103 (B.I.A. 2007), requires such a communication from the DHS before an IJ may terminate removal proceedings.

On October 3, 2008, Noel filed a timely petition for review in this Court. He raises three claims of error. First, he argues that the record does not support the IJ's finding that he willfully misrepresented his criminal record on the I-485 and I-751 forms. Second, he

6

argues that his removal is barred by the five-year statute of limitations of INA § 246(a), 8 U.S.C. § 1256(a). Third, he contends that the IJ and BIA violated due process by denying his motion to terminate removal proceedings under § 1239.2(f) simply because the DHS did not affirmatively communicate his prima facie eligibility for naturalization to the IJ.

## II.

Noel first argues that the IJ's finding that he willfully misrepresented his criminal past is not supported by the record. He concedes that he failed to disclose his convictions on the relevant immigration forms. Furthermore, he does not deny that these omissions were misrepresentations of "material" facts. *See* INA § 212(a)(6)(C)(i). He argues only that his failure to disclose his criminal record was not "willful" because he did not himself understand that the relevant forms requested that information, and the person he depended on to complete the forms for him (Ms. Rodas) never asked about the subject. "The element of willfulness is satisfied by a finding that the misrepresentation was deliberate and voluntary. The [government] does not need to show intent to deceive; rather, knowledge of the falsity of the representation will suffice." *Mwongera v. I.N.S.*, 187 F.3d 323, 330 (3d Cir. 1999) (internal citations and quotations omitted). Whether a misrepresentation was willful is an issue of fact. *Singh v. Gonzales*, 413 F.3d 156, 160 (1st Cir. 2005). Accordingly, we review the IJ's finding of willfulness under the "substantial evidence" standard, and we must uphold it unless the record is such that "any reasonable adjudicator would be compelled to conclude" that the IJ erred. *Chen v. Gonzales*, 434 F.3d 212, 216 (3d Cir. 2005) (quoting 8

7

U.S.C. § 1252(b)(4)). After reviewing the record, we conclude that a reasonable adjudicator could have concluded that Noel's misrepresentation was "deliberate and voluntary." *Mwongera*, 187 F.3d at 330. Therefore, we will not disturb the IJ's finding of willfulness.[3]

## III.

Next, Noel argues that even if he willfully misrepresented material facts in 1996 and 1998, his removal on that basis is barred by the five-year statute of limitations on rescissions of adjustment of status contained in INA § 246(a), which we applied in *Bamidele v. I.N.S.*, 99 F.3d 557 (3d Cir. 1996), and *Garcia v. Attorney General*, 553 F.3d 724 (3d Cir. 2009).

We lack jurisdiction to consider this claim. "A court may review a final order of removal only if," among other requirements, "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). This means that "an alien is required to raise and exhaust his or her remedies as to *each claim or ground for relief* if he or she is to preserve the right of judicial review of that claim." *Abdulrahman v. Ashcroft*, 330 F.3d 587, 594-95 (3d Cir. 2003) (emphasis added). Despite the jurisdictional nature of this requirement, we have taken a "liberal" approach to enforcing it. *Joseph v. Att'y Gen.*, 465 F.3d 123, 126 (3d Cir. 2006). "[S]o long as an immigration petitioner makes some effort, however insufficient, to place the Board on notice of a straightforward issue being raised on appeal, a petitioner is deemed to have exhausted [his] administrative remedies."

---

[3] We also reject Noel's subsidiary argument that the IJ erred, on the basis of her incorrect willfulness finding, in concluding that he was ineligible for a waiver under INA § 212(c) and/or cancellation of removal under INA § 240A.

*Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 422 (3d Cir. 2005).

Noel cannot satisfy even this permissive standard. His Notice of Appeal to the BIA did not argue that his removal was time-barred by § 246(a).[4] Indeed, nothing in the Notice, even when read "expansively[,] even suggested the issue." *Lin v. Att'y Gen.*, 543 F.3d 114, 121 (3d Cir. 2008). The Notice challenges only the IJ's finding that Noel willfully misrepresented material facts, and the IJ's decision not to terminate removal proceedings so that Noel could pursue naturalization. While "an alien need not do much to alert the Board that he is raising an issue," *Joseph*, 465 F.3d at 126, he must do something. Noel did not do so with respect to his § 246(a) claim.[5] Therefore, he has not exhausted his administrative remedies with respect to that claim, and we lack jurisdiction to consider it.

IV.

Finally, Noel contends that the IJ violated his due process rights by refusing to terminate his removal proceedings pursuant to 8 C.F.R. § 1239.2(f). That regulation provides, in relevant part, that "[a]n immigration judge may terminate removal proceedings to permit the alien to proceed to a final hearing on a pending application or petition for naturalization when [1] the alien has established prima facie eligibility for naturalization and

---

[4] Nor did the BIA consider the issue *sua sponte*. *See Lin v. Att'y Gen.*, 543 F.3d 114, 126 (3d Cir. 2008) (deeming exhaustion requirement satisfied where the petitioner failed to raise an issue but the BIA considered it *sua sponte*).

[5] At oral argument, Noel's counsel conceded that the statute of limitations issue was not presented to the BIA.

[2] the matter involves exceptionally appealing or humanitarian factors[.]"[6] In *Acosta-Hidalgo*, the BIA interpreted the first prong of this test to require "some affirmative communication regarding [the alien's] prima facie eligibility for naturalization from the DHS" before an IJ may terminate removal proceedings. 24 I&N Dec. at 107-08. We have upheld this interpretation as reasonable. *Zegrean v. Att'y Gen.*, 602 F.3d 273, 274 (3d Cir. 2010).

Here, the IJ declined to terminate removal proceedings pursuant to § 1239.2(f), and as the BIA noted, termination of proceedings would have been impermissible under *Acosta-Hidalgo* because the DHS had not provided any affirmative communication attesting to Noel's prima facie eligibility for naturalization. Noel does not dispute that § 1239.2(f), as interpreted in *Acosta-Hidalgo*, imposes an "affirmative communication" requirement. Rather, he argues that the Board's imposition of such a requirement is "fundamentally unfair because it gives the [DHS] complete veto power over a termination of removal proceedings through silence." He argues that he has demonstrated *prima facie* eligibility for naturalization, in that he (1) was a legal permanent resident for over five years; (2) was a person of good moral character for the last ten years; and (3) had not committed an

---

[6] The remainder of the regulation provides that "in every other case, the removal hearing shall be completed as promptly as possible notwithstanding the pendency of an application for naturalization during any state of the proceedings." 8 C.F.R. § 1239.2(f). The purpose reflected in § 1239.2(f) is to give removal proceedings priority over naturalization proceedings, "to prevent a race between an alien, seeking to be naturalized, and immigration authorities, [seeking] to complete removal proceedings." *Acosta-Hidalgo*, 24 I&N Dec. at 107 (internal quotations omitted).

aggravated felony. He also maintains that the "humanitarian factors" referenced in §

1239.2(f) weighed in favor of terminating removal proceedings, as he has lived in the United

States for more than two decades and has a wife and children who are American citizens.

According to Noel, under these circumstances, it was fundamentally unfair for the IJ and BIA

to deny him a chance at naturalization simply by virtue of the DHS's silence.[7]

We are not persuaded. Noel cites no authority for the proposition that the rule of

*Acosta-Hidalgo* violates due process, and our research reveals none. Noel points to Board

Member Filppu's dissent in *Acosta-Hidalgo*, but even Filppu did not argue that his preferred

reading of § 1239.2(f) was compelled by due process. He argued only that the majority's

interpretation created "difficult[ies]" and offered an alternative interpretation that would have

eliminated those difficulties. *See Acosta-Hidalgo*, 24 I&N Dec. at 109.

The rule announced in *Acosta-Hidalgo* is not fundamentally unfair. Congress, which

has plenary power over immigration, has granted the Attorney General the "sole authority

to naturalize persons as citizens of the United States." 8 U.S.C. § 1421(a). This authority

has been delegated to the DHS. *See Hernandez de Anderson v. Gonzales*, 497 F.3d 927, 933

(9th Cir. 2007). As *Acosta-Hidalgo* recognized, the BIA and IJs lack authority to determine

---

[7] It appears this is the first time Noel has raised this argument. "Normally, we have jurisdiction over an alien's claims only where the alien has raised and exhausted his or her administrative remedies as to that claim. However, due process claims are generally exempt from the exhaustion requirement because the BIA does not have jurisdiction to adjudicate constitutional issues." *Mudric v. Att'y Gen.*, 469 F.3d 94, 97-98 (3d Cir. 2006) (internal citations omitted). Our review is plenary. *Id.*

prima facie eligibility for naturalization. 25 I&N Dec. at 105-06. It is not fundamentally unfair for them to require affirmative confirmation of eligibility from the one entity that does have that authority before terminating removal proceedings under § 1239.2(f). *See Hernandez de Anderson*, 497 F.3d at 935 (rejecting due process challenge to § 1239.2(f)); "[g]iven Congress's plenary power over immigration," petitioner's argument "that the Attorney General and, derivatively, the DHS have been given too much authority over naturalization and removal decisions" was unpersuasive).

V.

For the foregoing reasons, the petition for review will be denied.

12

FISHER, *Circuit Judge*, concurring.

Though I unconditionally join my colleagues' opinion in Parts I, II and IV, I write separately to concur in Part III and to express my reservations about the strict enforcement of administrative exhaustion requirements in this case.

Under the clear precedent of this circuit, by which we are bound, the requirement that a petitioner administratively exhaust all issues by presenting them in a notice of appeal to the BIA is statutory and a prerequisite to our jurisdiction. *See* 8 U.S.C. § 1252(d)(1); *Abdulrahman*, 330 F.3d at 594-95. I agree with the majority's assessment that Romero failed to specifically raise his statute of limitations argument in his notice of appeal, and that under our strict interpretation of the requirements of § 1252(d)(1) that omission precludes our jurisdiction over the issue.

However, administrative exhaustion is a means to a practical end, not a question of mere technical compliance. *See Weinberger v. Salfi*, 422 U.S. 749, 765 (1975) ("Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review."); *cf. McRae v. Library of Congress*, 843 F.2d 1494, 1496 (D.C. Cir. 1988) ("[B]y requiring exhaustion before the agency in the first instance, Congress did not intend to erect a massive procedural roadblock to access to the courts."). The focus of an inquiry into administrative exhaustion should be whether the agency had actual notice and

opportunity to address the petitioner's grievance before resort to the federal courts. Because the agency clearly had such notice and opportunity here, and conceded as much at oral argument, I believe that strict enforcement of administrative exhaustion requirements in this case poorly serves Congress' intended ends in enacting such requirements.

As DHS noted to the Court, the IJ considered the application of *Bamidele*'s statute of limitations holding to Romero's case. (A.R. 165-66.) The IJ observed, "I've been forced to form an opinion on recision versus within the, the change in the law and the Third Circuit case being prior to the change in the law, so I didn't, I do have an opinion about that. I think they can . . . . I think they can just go with the removal proceedings." (A.R. 165.) Romero's counsel responded, "I know. . . . But I'll just put it in there so I can preserve it and that's all." (A.R. 166.) Although this exchange is admittedly oblique, no party disputes that it was a reference to *Bamidele*, which applied the five-year statute of limitations found in § 246(a) to removal proceedings based on erroneous adjustments of status. 99 F.3d at 563. The IJ's reference to the "change in law" reflects the 1996 amendment to § 246(a), which DHS believed invalidated *Bamidele* until our subsequent decision in *Garcia* reaffirmed its application. *Garcia*, 553 F.3d at 728. Thus, although counsel unnecessarily conceded that *Bamidele* offered no post-amendment remedy, this concession was based on an interpretation of uncertain law and reflected a desire to "preserve" the issue for later review. At the time the notice of appeal was filed, omitting

2

this issue for review, *Garcia* had not yet been decided and the status of *Bamidele* in light of the statutory amendment remained unclear.

Although the amendment of § 246(a), and its uncertain impact on *Bamidele*, does not definitively excuse Romero's failure to raise the statute of limitations defense in his notice of appeal, I believe it places the onus on the agency, as opposed to the court, to argue that it was unduly surprised by Romero's later resurrection of this issue on appeal. The agency never raised administrative exhaustion in its briefs, and it was this panel that first broached the topic at oral argument. In fact, DHS conceded that it had considered and rejected an administrative exhaustion argument because the statute of limitations issue had been raised with the IJ, citing the portion of the administrative record quoted above. Where, as here, the purposes of administrative exhaustion have been served, I do not believe that Congress intended our jurisdiction to turn on mere technicalities. *Cf. Bowden v. United States*, 106 F.3d 433, 439 (D.C. Cir. 1997) ("[E]xhaustion requirements . . . are practical and pragmatic and should not be invoked when they serve no practical purpose.") (quotation omitted).

I therefore join the majority in the outcome of this case, but also share in the reservations expressed by this Court in *Lin*, where we stated, "[W]hile there is reason to cast doubt upon the continuing validity of our precedent holding that issue exhaustion is a jurisdictional rule, short of a review en banc, we must dutifully apply that precedent."

543 F.3d at 120 n.6; *see also See Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 107 (2d

Cir. 2007).